Michael S. Anderson (13976)
Victoria R. Luman (16092)
W. Ash McMurray (16899)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
manderson@parrbrown.com
vluman@parrbrown.com
amcmurray@parrbrown.com

*Attorneys for Plaintiffs Jessica McCombs and David Crespo*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JESSICA MCCOMBS, an individual, and DAVID CRESPO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL COLLINS, an individual, SERGIO MARTICORENA, an individual, and SPIRIT MACHINES, LLC, a Utah limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. _2:25-cv-00185_____<br><br>District Judge _____ |

Plaintiffs Jessica McCombs and David Crespo (collectively, "Plaintiffs") hereby file this

Complaint against Defendants Michael Collins, Sergio Marticorena, and Spirit Machines, LLC

(collectively, "Defendants") and for their claims allege as follows:

## JURISDICTION AND VENUE

1.       This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2022, the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, and the copyright laws of the United States, 17 U.S.C. § 101 *et seq.* (the "Copyright Act").

2.       This Court has jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and pursuant to the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367.

3.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all Defendants reside or have their principal place of business in this District and a substantial number of events giving rise to this action occurred in this District.

4.       This Court has personal jurisdiction over Defendants because, on information and belief, they have conducted business in the State of Utah and/or have such minimum contacts with the State of Utah relating to the subject matter of this lawsuit that personal jurisdiction is satisfied.

## PARTIES

5.       Plaintiff McCombs ("McCombs"), professionally known as Pepper Rose, is an individual domiciled in Utah.

6.       Plaintiff David Crespo ("Crespo") is an individual domiciled in Utah.

7.       Upon information and belief, Defendant Michael Collins ("Collins") is an individual domiciled in Salt Lake County, Utah.

8.       Upon information and belief, Defendant Sergio Marticorena ("Marticorena") is an individual domiciled in Salt Lake County, Utah.

9.       Upon information and belief, Defendant Spirit Machines, LLC (the "Company") is a Utah limited liability company with its principal place of business in Salt Lake County, Utah.

## FACTUAL BACKGROUND

**A.    Plaintiffs Form the Band "Spirit Machines."**

10.    McCombs and Crespo are musicians and songwriters, and they are the original founding partners of the band known as "Spirit Machines" (the "Band").

11.    McCombs is the Band's lead vocalist, and Crespo is its lead guitarist.

12.    In or around 2017, Crespo conceived the idea of starting a band called "Spirit Machines," which name was inspired by the album "Spiritual Machines" by Our Lady Peace, and he began writing songs to be performed under that name.

13.    In early 2018, McCombs and Crespo began performing together, and Crespo invited McCombs to write lyrics for the songs he was writing and join him in starting the Band. McCombs agreed, and she and Crespo formed the Band to perform songs that they would co-write and co-own jointly.

14.    In April 2018, McCombs and Crespo completed their first co-written song, "Eagle," with the melody, harmony, and rhythm written by Crespo and lyrics written by McCombs.

15.    On August 3, 2018, at Shades Brewing in South Salt Lake, Utah, McCombs and Crespo performed publicly as the Band "Spirit Machines" for the first time.

16.    True and correct copies of advertisements for the Band's first performance as "Spirit Machines" are attached hereto as **Exhibit A**.

17.    As of the time of that first performance, McCombs and Crespo were the only members of the Band, and they continued to perform without other band members until approximately September 2018.

18.    In or around September 2018, Collins was invited to play with the Band as a drummer, and he performed publicly with the Band for the first time on January 5, 2019.

19.     A few months later, Marticorena was invited to play with the Band as a bassist, and he performed publicly with the Band for the first time on March 5, 2019.

**B.      Plaintiffs Are the Sole Co-Authors and Copyright Owners of the Subject Compositions.**

20.     The Band performs and records original music co-written by McCombs and Crespo.

21.     Since April 2018, McCombs and Crespo have co-written approximately 33 original musical compositions together (collectively, the "Subject Compositions"), which are identified in **Exhibit B**.

22.     Specifically, McCombs wrote all of the lyrics for each of the Subject Compositions, and Crespo wrote substantially all of the melody, harmony, rhythm, structure, and other aspects of each of the Subject Compositions.

23.     Collins did not significantly contribute to any of the Subject Compositions. Specifically, Collins has only ever suggested a change to one note in the song "Changeling" and one chord in the song "The Beach" that were incorporated into their final compositions, which were immaterial and de minimis contributions, and he has never otherwise contributed to any of the Subject Compositions.

24.     Marticorena did not contribute to any of the Subject Compositions.

25.     Consequently, McCombs and Crespo are the sole and exclusive authors of all Subject Compositions.

26.     Sound recordings of each of the Subject Compositions have been created (collectively, the "Subject Recordings"), all of which include performances by McCombs and Crespo, and some of which include performances by Collins and Marticorena, as identified in Exhibit B.

**C.    Formation of the Company.**

27.    The Company is a member-managed limited liability company and was formed under the laws of the State of Utah on or about June 10, 2020.

28.    On or about March 19, 2023, in anticipation of a potential record deal that ultimately never materialized, McCombs, Crespo, Collins, and Marticorena each signed the Limited Liability Company Operating Agreement for Spirit Machines, LLC (the "Operating Agreement"), a true and correct copy of which is attached hereto as **Exhibit C**.

29.    The effective date of the Operating Agreement is September 2, 2022. [Operating Agreement at p.10.]

30.    The Operating Agreement identifies McCombs, Crespo, Collins, and Marticorena as both members and managers of the Company. [*Id.* §§ 4.1–4.2.]

31.    The Operating Agreement does not include any language identifying or describing any assets or other property of the Company, nor does it contain any language granting, assigning, transferring, licensing, or otherwise providing any right, title, or interest in or to any assets or property, including without limitation any intellectual property, to the Company.

32.    There is no written work-for-hire or other agreement purporting to grant, assign, transfer, or license any ownership in or other right, title, or interest in or to, in whole or in part, the Subject Compositions or the copyrights thereto to the Company, Collins, Marticorena, or any other person or entity.

33.    There is no written work-for-hire or other agreement purporting to grant, assign, transfer, or license any ownership in or other right, title, or interest in or to, in whole or in part, the Subject Recordings or the copyrights thereto to the Company or any other person or entity.

34.    Therefore, the Company does not own or hold any right, title, or interest in or to, in whole or in part, the Subject Compositions or the Subject Recordings.

35.     Accordingly, whether individually or through the Company, neither Collins nor Marticorena own or hold any right, title, or interest in or to, in whole or in part, the Subject Compositions.

**D.      Plaintiffs Own the Trademark "SPIRIT MACHINES" for Live and Recorded Musical Performances and Related Goods and Services.**

36.     Since at least as early as August 3, 2018, McCombs and Crespo have marketed, promoted, advertised, and provided services and goods, including without limitation live and recorded musical performances, using the name and mark "SPIRIT MACHINES" ("Plaintiffs' Mark").

37.     McCombs and Crespo own common-law trademark rights to Plaintiffs' Mark in connection with the following goods and services including without limitation: live and recorded musical performances; physical audio and video recordings; and digital, downloadable, non-downloadable, and streamed audio and video recordings (collectively, "Plaintiffs' Goods and Services").

38.     McCombs and Crespo have filed applications with the U.S. Patent and Trademark Office ("USPTO") for federal registration of Plaintiffs' Mark in connection with Plaintiffs' Goods and Services (collectively, the "Federal Applications"), which applications are currently pending and have the following U.S. Serial Numbers: 98,904,561; 99,008,287; and 99,008,524.

39.     The Federal Applications seek registration of Plaintiffs' Mark in connection with Plaintiffs' Goods and Services under International Classes 9 and 41.

40.     There is no written or other agreement purporting to grant, assign, transfer, or license any ownership in or other right, title, or interest in or to, in whole or in part, Plaintiffs' Mark to the Company, Collins, Marticorena, or any other person or entity.

41.     Therefore, Defendants do not own or hold any right, title, or interest in or to, in whole or in part, Plaintiffs' Mark.

**E.      The T-Shirt Trademark Registration.**

42.     On or about July 6, 2021, U.S. Service Mark Registration No. 6,407,924 for the mark SPIRIT MACHINES (the "T-Shirt Registration") was registered with the USPTO under International Class 25 for "T-shirts" only and no other goods or services. A true and correct copy of the certificate for the T-Shirt Registration is attached hereto as **Exhibit D**.

**F.      The Company Has Failed to Reimburse Plaintiffs' Expenses as Required by the Operating Agreement.**

43.     Section 6.4 of the Operating Agreement provides that "[t]he Company shall reimburse the Manager(s) for all direct out-of-pocket expenses incurred by them in managing the Company."

44.     Since its formation, expenses necessary to and incurred in the course of managing the Company have been paid primarily by McCombs and Crespo, including without limitation costs related to live and recorded performances, travel, merchandise, and other debts incurred by the Company (collectively, the "Company Expenses").

45.     As of the date of this Complaint, McCombs has incurred and paid at least $21,086.86 in direct out-of-pocket Company Expenses, and Crespo has incurred and paid at least $14,106.76 in direct out-of-pocket Company Expenses—thus, in managing the Company McCombs and Crespo have incurred and paid Company Expenses totaling more than $35,193.62 (collectively, "Reimbursable Expenses").

46.     McCombs and Crespo have requested payment from Defendants of the unpaid Reimbursable Expenses.

47.     As of the date of this Complaint, the Company has not paid McCombs and/or Crespo amounts due and owed to them for the foregoing Reimbursable Expenses.

48.     To the extent that the Reimbursable Expenses are for any reason deemed not to be reimbursable under the Operating Agreement, they constitute either capital contributions or, alternatively, a debt, loan, or other obligation of and/or to the Company.

49.     Taking the Reimbursable Expenses as capital contributions, McCombs and Crespo were and are entitled to associated increases to their respective membership interests, capital accounts, and distribution accounts as of the dates such contributions were made pursuant to Section 7.2 of the Operating Agreement.

50.     Section 7.2 of the Operating Agreement states, in relevant part:

**MEMBER'S ACCOUNTS** The Manager(s) shall maintain separate capital and distribution accounts for each Member. Each Member's capital account shall be determined and maintained in the manner set forth in Treasury Regulation 1.704-l(b)(2)(iv) and shall consist of his initial capital contribution increased by: (a) any additional capital contribution made by him/her . . . .

51.     Section 2.1 of the Operating Agreement states:

**INITIAL CONTRIBUTIONS** The Company was in formation and operation prior to the Execution Date of this Operating Agreement, meaning at the time of this Operating Agreement, the existing Manager(s) did not provide any Capital Contribution. The Manager(s) agree to waive the requirement for an initial contribution of capital. The Manager(s) are not required to provide any capital at the time of this Operating Agreement, and agree to only have future distributions according to each Manager(s) interest of the Company, as reflected in Exhibit 1, attached hereto.

52.     In short, under Section 2.1, McCombs, Crespo, Collins, and Marticorena each acknowledged and agreed that no capital contributions had been made to the Company, and they each waived any requirement to provide any initial contribution of capital. [*Id.* § 2.1.]

53.     Upon information and belief, Defendant Collins has incurred only approximately $1,000 in direct out-of-pocket Company Expenses as of the date of this Complaint that could be counted as potential reimbursable expenses or capital contributions to the Company.

54.     Upon information and belief, Defendant Marticorena has made no additional contribution to the Company.

55.     On information and belief, the following table ("Table 1") accurately represents the relative contributions and membership interests of McCombs, Crespo, Collins, and Marticorena as of the date of this Complaint:

| Table 1 – Company Capital Contributions and Membership Interests | | |
|---|---|---|
| **Member** | **Total Capital Contribution** | **Membership Interest** |
| McCombs | $21,086.86 | 58.26% |
| Crespo | $14,106.76 | 38.98% |
| Collins | $1,000.00 | 2.76% |
| Marticorena | $0.00 | 0.00% |
| **Totals** | **$36,193.62** | **100.00%** |

56.     In the event that the Reimbursable Expenses constitute a debt, loan, or other obligation to the Company, as of the date of this Complaint, the Company owes McCombs and Crespo $35,193.62plus interest at the rate of ten percent per annum as provided under Utah Code § 15-1-1(2), which provides that "[u]nless the parties to a lawful written, verbal, or implied contract expressly specify a different rate of interest, the legal rate of interest for the contract, including a contract for services, a loan of forbearance of any money, goods, or services, or a claim for breach of contract is 10% per annum."

**G.     Collins and Marticorena Breach Their Fiduciary Duties and Are Expelled from the Band.**

57.     Beginning in approximately early 2024, Collins and Marticorena began to engage in conduct that adversely and materially affected the business and affairs of the Company and Band.

58.     Specifically, Collins has adversely and/or materially affected the business and affairs of the Company and Band by, among other things:

   a.    Abusing, misusing, and/or wasting Company funds;

   b.    Antagonizing venue hosts, co-headline performers, and studio producers;

   c.    Refusing and/or otherwise failing to prepare for and/or participate in live performances by the Band;

   d.    Refusing and/or failing to arrive in a timely manner for live performances by the Band;

   e.    Refusing and/or otherwise failing to transport equipment to venues for live performances by the Band; and

   f.    Refusing and/or otherwise failing to perform marketing duties for which he was and is responsible and accountable.

59.     Likewise, Marticorena has as adversely and/or materially affected the business and affairs of the Company and Band by, among other things:

   a.    Abusing, misusing, and/or wasting Company funds;

   b.    Antagonizing venue hosts and co-headline performers;

   c.    Refusing and/or otherwise failing to prepare for and/or participate in live performances by the Band;

   d.    Refusing and/or failing to arrive in a timely manner for live performances by the Band;

   e.    Refusing and/or otherwise failing to transport equipment to venues for live performances by the Band;

   f.    Arriving at performances drunk or intoxicated; and

g.    Refusing and/or otherwise failing to participate meaningfully in the management of the Band and/or Company.

60.    Prior to December 2024, the Band sold music and merchandise through accounts on Bandcamp (the "Bandcamp Accounts").

61.    Upon information and belief, in or around December 2024, Collins and Marticorena caused the Bandcamp accounts for the Band to be removed, preventing sales of sales of music and merchandise.

62.    As a result of Collins's and Marticorena's actions the Company and Band and Company have suffered financial harm, including without limitation decreased revenue from live performances, record sales, and merchandise sales.

63.    The Company and Band have also suffered reputational harm as a result of Collins's and Marticorena's actions, including without limitation with venues who have refused or are reluctant to allow the Band to perform.

64.    Despite McCombs and Crespo's many attempts to meet and resolve the foregoing issues, Collins and Marticorena repeatedly refused to act or cooperate in good faith.

65.    Consequently, Collins and Marticorena were expelled from the Band as of August 28, 2024.

66.    As of August 29, 2024, McCombs and Crespo have been the sole and exclusive members of the Band.

**H.    Plaintiffs' Efforts to Mitigate Harms Caused by Collins and Marticorena.**

67.    To mitigate the harms caused by Collins and Marticorena, McCombs and Crespo have continued to engage in public performances without Collins and Marticorena.

68.    For example, upon information and belief, since its formation, the Company has incurred at least $6,768 in debt (the "Company Debt") to pay for expenses related to the

Company's management, including without limitation fees, costs, and other expenses related to music recording and production, marketing, photography, merchandise, transportation, lodging, and banking.

69.     McCombs and Crespo have personally and directly contributed funds to pay and reduce the Company Debt.

70.     On or around July 10, 2024, McCombs and Crespo requested that Collins and Marticorena assist in paying their pro-rata share of the Company Debt.

71.     Collins and Marticorena have refused and/or otherwise failed pay any amounts toward reducing the Company Debt.

72.     Upon information and belief, due to McCombs and Crespo's efforts and at their personal expense made on behalf of the Company, McCombs and Crespo have successfully paid all the then-existing Company Debt as of the date of this Complaint.

**I.      Defendants' October 10, 2024 Demand Letters.**

73.     On or around October 10, 2024, Defendants sent, through counsel, substantively identical demand letters (collectively, the "October Demand Letter") to both McCombs and Crespo. A true and correct copy of the October Demand Letter is attached hereto as **Exhibit E**.

74.     The October Demand Letter falsely alleges, among other things, that "[Plaintiffs] engaged in multiple accounts of wrongful conduct by booking numerous Unauthorized Shows (defined herein), and additionally performing at these Unauthorized Shows with third parties outside of the [Operating] Agreement," and that "[Plaintiffs] have been willfully and persistently committing material breaches of the [Operating] Agreement by repeatedly using the Company Trademark without the Company's authorization . . . ." [October Demand Letter at 2.]

75.     In the October Demand Letter, Defendants "demand," among other things, "that [Plaintiffs] immediately cease and desist from any further use of the Company Trademark 'Spirit

Machines,'" i.e., the T-Shirt Registration, and "from entering into agreements for Unauthorized Shows."

76.     Defendants also threaten in the October Demand Letter to file a lawsuit against Plaintiffs if they failed to comply with Defendants' demands:

> Failure to comply with this demand letter will leave our Client with no choice but to pursue all available legal remedies to protect its rights, including, but not limited to, informing any, without limitation, promoters or venues for any Unauthorized Shows, Trademark Infringement, or potential fraud regarding payment as it relates to the Company and its assets, **and the filing of a lawsuit in a court of competent jurisdiction**.

[October Demand Letter at 4 (emphasis added).]

**J.    Defendants Attempt to Wrongfully Expel Plaintiffs from the Company.**

77.     On or about November 14, 2024, Plaintiffs received emails (collectively, the "Expulsion Notices") sent by Defendants that, among other things, purported to expel McCombs and Crespo from the Company as of November 12, 2024, pursuant to Section 8.2 of the Operating Agreement.

78.     Section 8.2 of the Operating Agreement states, in relevant part:

> **EXPULSION.** A Member may be expelled from the Company by an affirmative vote of the Members holding a majority of the Ownership Interests held by Members other than the expelled Member, **if** the expelled Member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of the Company, or the expelled Member has willfully or persistently committed a material breach of the articles of organization of the Company or this agreement or has otherwise breached a duty owed to the Company or to the other Members to the extent that it is not reasonably practicable to carry on the business or affairs of the Company with that Member.

[Operating Agreement § 8.2 (emphasis added).]

79.     Accordingly, under the terms of the Operating Agreement, a member of the Company may be expelled *only if* that member (a) "has been guilty of wrongful conduct that adversely and materially affects the business or affairs of the Company"; (b) "has willfully or

persistently committed a material breach of the articles of organization of the Company or [the Operating Agreement]"; or (c) "has otherwise breached a duty owed to the Company or to the other Members to the extent that it is not reasonably practicable to carry on the business or affairs of the Company with that Member" [*See id.*]

80.     Plaintiffs have not (a) engaged in or been found "guilty" of any "wrongful conduct that adversely and materially affect[ed] the business or affairs of the Company"; (b) "willfully or persistently committed a material breach of the articles of organization of the Company or [the Operating Agreement]"; or (c) "breached a duty owed to the Company or to the other Members to the extent that it is not reasonably practicable to carry on the business or affairs of the Company with [Plaintiffs]."

81.     Furthermore, Section 8.2 of the Operating Agreement permits the expulsion of a member only "by an affirmative vote of the Members holding a majority of the Ownership Interests held by Members other than the expelled Member."

82.     On information and belief, Table 1 accurately represents the relative membership interests of McCombs, Crespo, Collins, and Marticorena as of November 14, 2024.

83.     On information and belief, as of November 14, 2024, Collins and Marticornea did not hold a majority of the Ownership Interests to be capable of expelling either McCombs and/or Crespo under the terms of the Operating Agreement.

84.     Accordingly, any purported expulsion of McCombs and/or Crespo from the company is wrongful, invalid, and ineffective.

85.     In the event that McCombs and Crespo are deemed to have been expelled from the Company, upon information and belief, Collins and Marticorena are the alter egos of the Company.

**K.    Defendants' Trademark Infringement, False and Misleading Statements, and Interference with Plaintiff's Business Relations.**

86.    Upon information and belief, Collins and/or Marticorena control the website (spiritmachinesband.com) for the Band (the "Website").

87.    Upon information and belief, Collins and/or Marticorena control the Band's social media accounts (collectively, the "Social Media Accounts"), including:

      a.    Facebook: facebook.com/spiritmachines (the "Facebook Account");

      b.    Instagram: instagram.com/spiritmachines (the "Instagram Account");

      c.    Twitter/X: x.com/SpiritMachines (the "Twitter Account"); and

      d.    YouTube: youtube.com/@SpiritMachines (the "YouTube Account").

88.    Upon information and belief, Collins and/or Marticorena control the Band's Venmo: @spiritmachines (the "Venmo Account").

89.    Upon information and belief, Collins and/or Marticorena control the email account (spiritmachinesband@gmail.com) for the Band (the "Email Account").

90.    Upon information and belief, Collins and/or Marticorena control the Band's artist account on Spotify (the "Spotify Account")

91.    Upon information and belief, Collins and/or Marticorena control the Company's online UtahID account with the Division of Corporations (the "UtahID Account").

92.    Upon information and belief, Collins and Marticorena gained access to and control of the Website, Social Media Accounts, Email Account, and Spotify Account (collectively, the "Band Accounts") as well as the UtahID Account in connection with and exclusively for the furtherance of the benefit of the Band and/or the Company.

93.    The Band Accounts all use Plaintiffs' Mark in connection with Plaintiffs' Goods and Services.

94.     Upon information and belief, the Band Accounts do not use the mark "SPIRIT MACHINES" in connection with the sale or offering of t-shirts.

95.     Despite requests from McCombs and Crespo, Collins and Marticorena have denied Plaintiffs access to the Band Accounts and the UtahID Account.

96.     Collins and Marticorena have publicly made false and misleading statements about McCombs and Crespo, including without limitation on the Band Accounts and UtahID Account.

97.     For example, Collins and Marticorena changed the Instagram Account's description to falsely state: "Dave Crespo & Pepper Rose are no longer in the band. Unauthorized booking of Spirit Machines violates trademark # 90231925" (i.e., the T-Shirt Registration).

98.     Furthermore, on or around December 26, 2024, Collins and Marticorena sent an email and accompanying letter (collectively, the "MMH Correspondence") to Metro Music Hall, a live music venue in Salt Lake City, Utah, where McCombs and Crespo were engaged to perform on December 28, 2024, as the Band using Plaintiffs' Mark.

99.     The MMH Correspondence falsely states, among other things, that:

a.      "[T]he use of 'Spirit Machines' in connection with this event constitutes unauthorized use and violates [Defendants'] trademark";

b.      "Spirit Machines, LLC, holds exclusive rights to the name 'Spirit Machines'";

c.      "Two former members, Jessica McCombs and David Crespo, were formally removed from the company in accordance with our Operating Agreement and Utah state law"; and

    d.        "[McCombs and Crespo] do not have the legal right to perform or operate under the name 'Spirit Machines'";

    e.        "The performers listed as 'Spirit Machines' are former members of Spirit Machines, LLC, who were formally expelled in accordance with our Operating Agreement";

    f.        "These individuals have no legal claim to the name and are engaging in activities that constitute trademark infringement"; and

    g.        "[McCombs and Crespo's] continued unauthorized use of the Spirit Machines name and trademark constitutes a clear violation of our rights and established trademark law."

100.    The MMH Correspondence further threatens the venue with potential trademark infringement and requests "[i]mmediate removal of the name 'Spirit Machines'" from all promotional materials, including websites, social media, and ticketing platforms," as well as "[c]ancellation or renaming of the infringing act listed under this name for the event."

101.    As a consequence of the MMH Correspondence, McCombs and Crespo were required by Metro Music Hall to perform under a name other than Plaintiffs' Trademark.

102.    In order to mitigate their damages, McCombs and Crespo agreed perform under a different name.

103.    Upon information and belief, Collins and Marticorena have contacted other venues making similar false and misleading statements.

104.    In early January 2025, Collins and Marticorena also sent a letter (the "January Letter") to fans and other individuals subscribed to the Band's newsletter that falsely states,

among other things, that "[a]s of November 12, 2024, Dave Crespo and Jessica 'Pepper'

McCombs no longer have any performing or decision-making role within Spirit Machines."

105.    The January Letter also falsely implies that Collins and Marticorena are co-

authors of the Subject Compositions by stating: "Despite our Operating Agreement, which

recognizes all four members equally, [Crespo] and [McCombs] registered nearly all songwriting

credits under their names with BMI, implying that every bass note, drum fill, and song structure

was their creation alone."

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment – Copyright Ownership)
### (Against All Defendants)

106.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if

fully set forth herein.

107.    As described more fully above, Plaintiffs conceptualized, created, developed, and

authored each of the Subject Compositions, including their lyrics, melodies, harmonies, and

rhythms.

108.    As described more fully above, Plaintiffs own the Subject Compositions as well

as the copyrights to the Subject Compositions.

109.    Defendants have directly and/or indirectly claimed ownership of the Subject

Compositions, as well as ownership to the copyright to the Subject Compositions.

110.    The Copyright Act requires a written agreement to transfer ownership of a

copyright.

111.    As described more fully above, there is no written agreement to transfer

ownership of the copyright to the Subject Compositions between, on the one hand, Plaintiffs and,

on the other hand, the Company, Collins, and/or Marticorena.

112.    The Subject Compositions are not, as a matter of law, works made for hire under the Copyright Act because Plaintiffs were not employees of the Company and because there is no agreement that the Subject Compositions were works made for hire as those terms are used in the Copyright Act.

113.    Plaintiffs seek an interpretation of their rights to the Subject Compositions under the Copyright Act.

114.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiffs are the sole and exclusive owners of the Subject Compositions and of the copyrights to the Subject Compositions.

115.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights to the Subject Compositions and copyrights to the Subject Compositions as described herein.

116.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Plaintiffs are the sole and exclusive owners of the Subject Compositions and the copyright to the Subject Compositions.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment – No Trademark Infringement)
### (Against All Defendants)

117.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

118.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiffs have not infringed and are not infringing the Company's alleged trademark rights in the T-Shirt Mark.

119.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights to continue using Plaintiffs' Mark in connection with goods and services as described herein, including without limitation entertainment services, live musical performances, audio and video recordings, and non-downloadable online videos.

120.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure that Plaintiffs' use of Plaintiffs' Mark in connection with Plaintiffs'' Goods and Services is not likely to cause consumer confusion and does not infringe, either directly or indirectly, and trademark rights of the Company under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a).

### THIRD CLAIM FOR RELIEF
**(Trademark Infringement – 15. U.S.C. § 1125(a) / Lanham Act § 43(a))**
**(Against All Defendants)**

121.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

122.    As described more fully above, Plaintiffs are the sole members of the Band as of August 29, 2024.

123.    As described more fully above, Plaintiffs are the sole and exclusive owners of Plaintiffs' Mark in connection with Plaintiffs' Goods and Services.

124.    Plaintiffs' Mark is a valid and legally protectable trademark.

125.    As described more fully above, Plaintiffs have made unauthorized use of Plaintiff's Mark on the Band's Accounts, including the Website, Social Media Accounts, Email Account, and Spotify Account.

126.    Defendants' unauthorized use in commerce of Plaintiffs' Mark as alleged herein constitutes use of a false designation of origin and/or misleading description and/or representation of fact.

127.    Defendants' conduct as alleged herein is willful and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiffs and Plaintiffs' Band, including without limitation that Defendants are affiliated with and/or are members of the Band, and that Plaintiffs are no longer affiliated with and/or no longer members of the Band.

128.    Defendants' conduct as alleged herein is intended to and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, and/or affiliation of Defendants' services, including without limitation that Plaintiffs' performances are not affiliated with or authorized by the Band.

129.    Defendants' conduct as alleged herein has caused and/or is causing irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.

130.    Plaintiffs have no adequate remedy at law for Defendants' infringement of Plaintiffs' Mark.

131.    Plaintiffs are entitled to injunctive relief and an award of actual damages against Defendants, Defendants' profits, Plaintiffs' damages, and/or costs of the action pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(c).

### <u>FOURTH CLAIM FOR RELIEF</u>
**(Cybersquatting – Utah Code § 70-3a-309)**
**(Against All Defendants)**

132.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 and 121 through 131 as if fully set forth herein.

133.     Plaintiffs' Mark was distinctive at the time Defendants acquired and/or began exercising unauthorized control and use of the Website having the domain name spiritmachinesband.com (the "Domain Name").

134.    The Domain Name is confusingly similar to Plaintiffs' Mark.

135.    Defendants have used the Domain Name in bad faith to profit from Plaintiffs' Mark.

136.    Defendants' bad faith is evidenced by, among other things:

    a.    Defendants' lack of any legitimate intellectual property rights in the Domain Name;

    b.    Defendants' use of the Domain Name in connection with Plaintiffs' Goods and Services, rather than, for example, the sale of t-shirts; and

    c.    On information and belief, Defendants were aware of Plaintiffs' rights in and to Plaintiffs' Mark before the Domain Name was used without authorization by Defendants.

137.    Defendants' use of the Domain Name constitutes cybersquatting in violation of Utah Code § 70-3a-309.

138.    Plaintiffs are therefore entitled to relief as provided by law and are also entitled to recover punitive damages from Defendants pursuant to Utah Code § 78B-8-201(1)(a).

## FIFTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement)
### (Against All Defendants)

139.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 and 121 through 138 as if fully set forth herein.

140.    Plaintiffs have protectable common law rights in Plaintiffs' Mark as a result of its continuing use of the mark in providing Plaintiffs' Goods and Services.

141.    Defendants have made unauthorized use of Plaintiffs' Mark in commerce.

142.    Defendants' use of Plaintiffs' Mark in commerce is likely to cause confusion, mistake, and/or deception, including without limitation with regard to:

a.   The to the affiliation, connection, and/or association of Defendants with Plaintiffs and Plaintiffs' Band, including without limitation that Defendants are affiliated with and/or are members of the Band, and that Plaintiffs are no longer affiliated with and/or no longer members of the Band;

b.   The origin, source, sponsorship, and/or affiliation of Defendants' services, including without limitation that Plaintiffs' performances are not affiliated with or authorized by the Band; and

c.   Whether Plaintiffs or Defendants operate the Websites, Social Media Accounts, Email Account, and Spotify Account.

143.   On information and belief, Defendants have committed the foregoing acts with full knowledge of Plaintiffs' prior rights in Plaintiffs' Mark and with the willful intent to cause confusion and trade on Plaintiffs' and Plaintiffs' Band's goodwill.

144.   Defendants' conduct as alleged herein has caused and/or is causing irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.

145.   Plaintiffs have no adequate remedy at law for Defendants' infringement of Plaintiffs' Mark.

146.   Plaintiffs are entitled to injunctive relief and an award of actual damages against Defendants, Defendants' profits, and/or Plaintiffs' damages.

147.   Plaintiffs are also entitled to recover punitive damages from Defendants pursuant to Utah Code § 78B-8-201(1)(a).

## SIXTH CLAIM FOR RELIEF
### (Conversion)
### (Against All Defendants)

148.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

149.    Defendants intended to exercise dominion or control over the Band Accounts, including the Website, Social Media Accounts, Email Account, and Spotify Account, as well as the UtahID Account in a manner inconsistent with Plaintiffs' rights to the foregoing.

150.    Defendants wrongfully deprived Plaintiffs of the use and possession of the Band Accounts and the UtahID Account.

151.    Defendants retained the Band Accounts and the UtahID Account in derogation of Plaintiffs' rights.

152.    Defendants' conduct as alleged herein has caused and/or is causing irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.

153.    Plaintiffs have no adequate remedy at law for Defendants' infringement of Plaintiffs' Mark.

154.    Plaintiffs are entitled to injunctive relief and an award of actual damages against Defendants, Defendants' profits, and/or Plaintiffs' damages.

155.    Plaintiffs are also entitled to recover punitive damages from Defendants pursuant to Utah Code § 78B-8-201(1)(a).

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment – No and/or Wrongful Expulsion from Company)
### (Against All Defendants)

156.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

157.    The Operating Agreement constitutes a binding and enforceable contract between McCombs, Crespo, Collins, and Marticorena.

158.    Plaintiffs have fully performed under the Operating Agreement.

159.    As described more fully above, Defendants have materially breached the Operating Agreement by purporting to expel Plaintiffs from the Company in a manner that is unauthorized by Section 8.2 of the Operating Agreement.

160.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Plaintiffs have not been expelled from the Company pursuant to Section 8.2 of the Operating Agreement.

161.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights to continue as members and managers of the Company.

162.    Plaintiffs are entitled to a declaratory judgment that Defendants' purported expulsion of Plaintiffs is improper, null, and void, and that Plaintiffs remain and/or are fully reinstated as members and managers of the Company.

163.    Furthermore, as a direct and proximate result of the material breaches by Defendants, Plaintiffs have suffered and continue to suffer substantial damages for which they are entitled to receive compensation in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### (Breach of Contract – Reimbursable Expenses)
### (Against All Defendants)

164.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

165.    The Operating Agreement constitutes a lawful, valid, and enforceable contract between McCombs, Crespo, Collins, and Marticorena.

166.    Plaintiffs have fully performed under the Operating Agreement.

167.    Section 6.4 of the Operating Agreement provides that "[t]he Company shall reimburse the Manager(s) for all direct out-of-pocket expenses incurred by them in managing the Company."

168.    As described more fully above, Plaintiffs have incurred and paid Reimbursable Expenses in managing the Company totaling more than $35,193.62.

169.    At all relevant times, including when the Reimbursable Expenses were incurred, Plaintiffs were managers of the Company.

170.    Defendants have breached the Operating Agreement by, among other things, failing to pay amounts due and owing to Plaintiffs.

171.    As a direct and proximate result, Plaintiffs have been injured and suffered damages in an amount to be determined at trial, including unpaid principal and interest, and attorneys' fees and costs, as set forth above, but in no event less than $35,193.62.

**NINTH CLAIM FOR RELIEF**
**(Alternative Claim – Declaratory Judgment – Infused Funds)**
**(Against Company)**

172.    In the event that the Reimbursable Expenses are determined not to be payable to Plaintiffs pursuant to Section 6.4 of the Operating Agreement, Plaintiffs plead and claim in the alternative as follows.

173.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

174.    The Reimbursable Expenses constitute more than $35,193.62 (the "Infused Funds") that Plaintiffs infused into the Company.

175.    The Infused Funds constitute capital contributions to the Company by Plaintiffs McCombs and Crespo.

176.    As a result of the capital contributions, the respective percentage membership interests and capital accounts of Plaintiffs in and to the Company would increase, while Collins's and Marticorena's percentage membership interests would decrease.

177.    Alternatively, in the event that the Infused Funds are not considered a capital contribution, the amount of the Infused Funds represent a loan, debt, and/or obligation of the Company to Plaintiffs, which loan, debt, and/or obligation should be proportionally assessed against the respective interests in and to the Company of McCombs, Crespo, Collins, and Marticorena.

178.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that the Infused Funds constitute a capital contribution in and to the Company or, alternatively, a loan, debt, and/or obligation to the Company.

179.    Plaintiffs are entitled to a declaratory judgment that the Infused Funds constitute a capital contribution in and to the Company or, alternatively, a loan, debt, and/or obligation to the Company.

180.    Plaintiffs are also entitled to a declaratory judgment and order against all Defendants determining and declaring that:

        a.    In the event that the Infused Funds constitute a capital contribution, the respective percentage membership interest in and to the Company and capital accounts of McCombs, Crespo, Collins, and Marticorena be adjusted and recalculated proportionately in the amount of the Infused Funds;

b.    In the alternative, the respective portion of any and all loans, debts, and/or obligations of the Company with respect to McCombs, Crespo, Collins, and Marticorena, including without limitation the allocation of the Infused Funds.

**TENTH CLAIM FOR RELIEF**
**(Alternative Claim – Breach of the Covenant of Good Faith and Fair Dealing)**
**(Against All Defendants)**

181.    In the event that the Reimbursable Expenses are determined not to be payable to Plaintiffs pursuant to Section 6.4 of the Operating Agreement, Plaintiffs plead and claim in the alternative as follows.

182.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

183.    Utah law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Utah.

184.    As more fully described above, Defendants have breached the covenant of good faith and fair dealing by, among other things, purporting to expel Plaintiffs from the Company; failing to pay amounts due and owing to Plaintiffs; failing to properly adjust the respective percentage membership interests and capital accounts of McCombs, Crespo, Collins, and Marticorena, and/or failing to adjust the respective portion of any and all loans, debts, and/or obligations of the company with respect to of McCombs, Crespo, Collins, and Marticorena.

185.    As a direct and proximate result, Plaintiffs have been injured and suffered damages in an amount to be determined at trial, including unpaid principal and interest, and attorneys' fees and costs, as set forth above, but in no event less than $35,193.62.

## ELEVENTH CLAIM FOR RELIEF
### (Alternative Claim – Promissory Estoppel)
### (Against All Defendants)

186.    In the event that the Reimbursable Expenses are determined not to be payable to Plaintiffs pursuant to Section 6.4 of the Operating Agreement, Plaintiffs plead and claim in the alternative as follows.

187.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

188.    In the event that the Operating Agreement is found not to be enforceable, and to the extent that Defendants deny the existence or enforceability of the Operating Agreement, Plaintiffs plead and claim as follows.

189.    Defendants promised to reimburse or otherwise repay Plaintiffs in consideration for their Reimbursable Expenses.

190.    The promise was reasonably expected by Plaintiffs to induce action on the part of Plaintiffs.

191.    Defendants knew or should have known that Plaintiffs would rely on their promise to repay the Reimbursable Expenses when Plaintiffs paid or otherwise incurred them.

192.    Defendants failed to fulfill their promise when they refused to pay the Reimbursable Expenses.

193.    As a direct and proximate result, Plaintiffs have been injured and suffered damages in an amount to be determined at trial, including unpaid principal and interest, and attorneys' fees and costs, as set forth above, but in no event less than $35,193.62.

## TWELFTH CLAIM FOR RELIEF
### (Alternative Claim – Unjust Enrichment)
### (Against All Defendants)

194.    In the event that the Reimbursable Expenses are determined not to be payable to Plaintiffs pursuant to Section 6.4 of the Operating Agreement, Plaintiffs plead and claim in the alternative as follows.

195.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

196.    Defendants requested, and Plaintiffs agreed, that Plaintiffs provide the Company the Reimbursable Expenses.

197.    Defendants were aware at the time of payment of the Reimbursable Expenses that Plaintiffs expected repayment in exchange for paying the Reimbursable Expenses.

198.    Despite Plaintiffs' payment of the Reimbursable Expenses, Defendants have not repaid the full amount of the Reimbursable Expenses or any interest that has accrued.

199.    Defendants have been or will be unjustly enriched at Plaintiffs' expense as a result of the conduct alleged herein.

200.    Defendants knew or should have known that Plaintiffs conferred benefits on Defendants by paying the Reimbursable Expenses and that Plaintiffs expected repayment from Defendants commensurate with those benefits.

201.    Retention of the benefits conferred on Defendants by Plaintiffs would be unjust given the circumstances alleged herein.

202.    Plaintiffs do not have an adequate remedy at law for Defendants' unjust enrichment.

203. As a direct and proximate result, Plaintiffs have been injured and suffered damages in an amount to be determined at trial, including unpaid principal and interest, and attorneys' fees and costs, as set forth above, but in no event less than $35,193.62.

## THIRTEENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### (Against Collins and Marticorena)

204. Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

205. The Company is a member-managed limited liability company formed under the laws of the State of Utah.

206. As managers and members of the Company, Collins and Marticorena owe McCombs and Crespo duties of loyalty and care pursuant to the Utah Revised Uniform Limited Liability Company Act, Utah Code § 48-3a-409, and Utah common law.

207. As described more fully above, Collins and Marticorena have breached their duties of loyalty and care by, among other things:

   a.    Abusing, misusing, and/or wasting Company funds;

   b.    Refusing and/or otherwise failing to perform marketing duties for which he was and is responsible and accountable;

   c.    Antagonizing venue hosts and co-headline performers;

   d.    Refusing and/or otherwise failing to participate in live performances by the Band;

   e.    Refusing and/or failing to arrive in a timely manner for live performances by the Band;

   f.    Refusing and/or otherwise failing to transport equipment to venues for live performances by the Band;

      g.     Purporting to expel McCombs and Crespo from the Company in violation of the Operating Agreement; and

      h.     Knowingly engaging in other unlawful conduct as alleged herein.

208.    As a direct and proximate result of Collins's and Marticorena's breaches of their duties of loyalty and care, Plaintiffs have suffered and continue to suffer substantial damages for which they are entitled to receive compensation in an amount to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF
### (Defamation)
### (Against Collins and Marticorena)

209.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 as if fully set forth herein.

210.    As described more fully above, Collins and Marticorena have made false and defamatory statements about Plaintiffs, orally and in writing, including without limitation that Plaintiffs have been expelled from the Company, that Plaintiffs have been expelled from the Band, that Plaintiffs have engaged in unauthorized performances, and that Plaintiffs' use of Plaintiffs' Mark in connection with Plaintiffs' Goods and Services infringes on the T-Shirt Registration (collectively, the "Defamatory Statements").

211.    The Defamatory Statements are false statements of fact, are not statements of opinion, are defamatory, and were made and published by Collins and Marticorena.

212.    Collins and Marticorena made the Defamatory Statements with actual malice knowing that the statements were false or while entertaining serious doubts as to whether the statements were true.

213.    At a minimum, Collins and Marticorena made the Defamatory Statements negligently and without the requisite degree of care.

214.    The Defamatory Statements are defamatory *per se* because they accuse Plaintiffs of, among other things, illegal activity and discredited and injured Plaintiffs in respect to their trade or business, and thus are actionable without proof of special damages.

215.    In the event that the Defamatory Statements are deemed not to be defamatory *per se* for any reason, Defendants have suffered special damages, including without limitation lost revenue in an amount to be determined at trial.

216.    As a direct and proximate result of Collins's and Marticorena's Defamatory Statements Plaintiffs have suffered and continue to suffer substantial damages for which they are entitled to receive compensation in an amount to be determined at trial.

**FIFTEENTH CLAIM FOR RELIEF**
**(False Light)**
**(Against Collins and Marticorena)**

217.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 and 209 through 216 as if fully set forth herein.

218.    Collins's and Marticorena's conduct as alleged herein, including without limitation their publication of the Defamatory Statements, gave publicity to matters concerning Plaintiffs that placed it before the public in a false light.

219.    The false light in which Plaintiffs were placed would be highly offensive to a reasonable person.

220.    In placing Plaintiffs in a false light, Collins and Marticorena had actual knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which they placed Plaintiffs.

221.    As a direct and proximate result of Collins's and Marticorena's conduct, Plaintiffs have suffered and continue to suffer substantial damages for which they are entitled to receive compensation in an amount to be determined at trial.

## SIXTEENTH CLAIM FOR RELIEF
### (Intentional Interference with Economic Relations)
### (Against Collins and Marticorena)

222.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 105 and 209 through 221 as if fully set forth herein.

223.    Plaintiffs have existing economic relationships with venues, vendors, distributors, customers, and other contacts.

224.    Collins and Marticorena intentionally interfered with Plaintiffs' business and those relationships by making the Defamatory Statements.

225.    Collins and Marticorena intentionally interfered with Plaintiffs' business by publishing the Defamatory Statements in conjunction with requests that Plaintiffs' performances be cancelled or altered.

226.    Collins's and Marticorena's interference with Plaintiffs' business relationships was accomplished by improper means; specifically by making the Defamatory Statements about Plaintiffs and Plaintiffs' Mark with actual malice or with reckless disregard for the truth.

227.    As a direct and proximate result of Collins's and Marticorena's conduct, Plaintiffs have suffered and continue to suffer substantial damages for which they are entitled to receive compensation in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

A.    Entry of judgment declaring Plaintiffs as the sole owners of the Subject Compositions;

B.    Entry of judgment declaring Plaintiffs as the sole owner of the copyright to the Subject Compositions;

C.      Entry of judgment declaring that Plaintiffs have not infringed and are not infringing, either directly or indirectly, any valid and enforceable trademark rights of Defendants under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a);

D.      Entry of judgment that Defendants own no enforceable trademark rights in the mark SPIRIT MACHINES in connection with Plaintiff's Goods and Services;

E.      For an order and injunction enjoining Defendants and each of their officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them from alleging, representing, or otherwise stating that Plaintiffs' use of Plaintiffs' Mark infringes or dilutes any rights of Defendants;

F.      For an order and injunction immediately transferring to Plaintiffs, at the Defendants' cost, the Websites, Social Media Accounts, Email Account, and Spotify Account;

G.      For entry of judgment declaring that Defendants' purported expulsion of Plaintiffs from the Company is null, void, and unenforceable, and that Plaintiffs remain or are reinstated as members and managers consistent with the terms of the Operating Agreement;

H.      For an order and injunction enjoining Defendants and each of their officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them from alleging, representing, or otherwise stating that Plaintiffs have been expelled from the Company and/or Band;

I.      For an order and injunction enjoining Defendants and each of their officers, directors, agents, counsel, servants, employees, and all persons in active concert or participation with any of them from alleging, representing, or otherwise stating the Defamatory Statements alleged herein;

J.      For judgment against Defendants in an amount to be proven at trial, but which is not less than $35,193.62, or alternatively, entry of judgment declaring that the Infused Funds constitute capital contributions in and to the Company or, alternatively, a loan, debt, and/or obligation to the Company and that:

      a.    In the event the Infused funds constitute capital contributions, McCombs's, Crespo's, Collins's, and Marticorena's respective percentage interest in and to the Company be adjusted and recalculated proportionately in the amount of the Infused Funds; or

      b.    In the alternative, McCombs's, Crespo's, Collins's, and Marticorena's respective portion of any and all loans, debts, and/or obligations of the Company, including without limitation the allocation of the Infused Funds.

K.      For general and compensatory damages in an amount to be proven at trial;

L.      Pre- and post judgment interest;

M.      Any other specific relief alleged herein, including attorneys' fees and costs incurred by Plaintiffs in bringing this action; and

N.      For such other relief as this Court deems reasonable and just.

DATED this 11th day of March 2025.

PARR BROWN GEE & LOVELESS

*/s/ W. Ash McMurray*
Michael S. Anderson
Victoria R. Luman
W. Ash McMurray

*Attorneys for Plaintiffs*